UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEMAJ LEARY,<br><br>Defendant. | Criminal No. 19-cr-10474-DJC |

## GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS

The United States opposes defendant Semaj Leary's ("Leary") or (the "defendant") motion to suppress physical evidence derived from his August 15, 2019 encounter with the Boston Police Department.  (Dkt No. 43, hereinafter, the "Motion.")  Leary's Motion should be denied because he had no reasonable expectation of privacy in his abandoned property.  At the time of the seizure, there was probable cause to arrest Leary for trespass and resisting arrest, as well as reasonable suspicion that Leary was armed and dangerous.  Leary's motion to suppress should be denied.

## BACKGROUND

On August 15, 2019, four Boston Police Department ("BPD") officers assigned to the Youth Violence Strike Force patrolled Jamaica Plain in an unmarked BPD cruiser.  *See* Motion, Exhibit A[1], at p. 1.  Officers were patrolling in the rear of 2030 Columbus Avenue, a high crime area, when they observed Leary leaning against a vehicle, with a fanny pack strapped around his

---

[1] All citations to exhibits attached to the defendant's Motion utilize the defendant's lettering system.  All citations to exhibits presented by the government utilize a numerical schematic, beginning with Exhibit 1.  Specifically, Exhibit 1 is a video which cannot be filed on ECF and will be provided separately to defense counsel and the Court. The facts set forth herein are based upon Exhibit A, the police report, as well as the anticipated testimony of the officers in this case.

chest. *See id.* Officers were familiar with Leary and were aware that Leary was an active verified member of the H-Block gang. *Id.* Officers were also aware of a BRIC "Officer Safety and Awareness" bulletin disseminated on July 31, 2019, just two weeks prior, which noted that Leary may be in possession of a firearm. *See id.*; Exhibit C.

In addition, the officers were also familiar with a "trend" of concealing illegal firearms within fanny packs. *Id.*, at p. 1. Specifically, in the six weeks leading up to August 15, 2019, there were at least four BPD arrests involving illegal firearms concealed within fanny packs.[2] *See id.* Officers exited their unmarked cruiser and observed that Leary was nervous and "extremely concerned with the officers [sic] actions." Exhibit A, at p. 1. Leary took a few steps before taking off into a "complete sprint" as captured on the officer's body cameras. *See id.;* Exhibit 1. Leary ran toward the front of 2030 Columbus Avenue, hurdled a fence, and proceeded down School Street, where he hopped another fence. *See id.* While Leary was running, he repeatedly ignored Officer Conley's commands to keep his hands up.[3] Leary then ran down School Street, taking a left on Glines Avenue. *See id.* Leary then scaled another fence, and officers lost sight of him. *See id.* They then established a perimeter and radioed his whereabouts. *See id.*

While in front of 16 Chilcott Place, an individual told officers that someone had jumped into the back of a truck parked out back. Exhibit A, at p. 2. Officers announced their presence, and after a brief struggle, were able to place Leary in custody. *Id.* Officers observed that Leary had on no sneakers and no fanny pack. *Id.* Nearby, officers located a sneaker stuck on a fence, and the fanny pack approximately 5 feet away, behind a discarded door. *Id.*; *see* Exhibit 2, Exhibit

---

[2] As set forth in Exhibit A to the Motion, these arrests occurred on June 24, 2019, July 8, 2019, July 21, 2019, and July 29, 2019.

[3] As Leary ran, Officer Conley could see that his arms were not always "pumping" in a manner consistent with Leary running at a full sprint, leading Officer Conley to believe he may have been attempting to manipulate the fanny pack strapped across his chest.

3.  When officers opened the fanny pack, they discovered a loaded firearm and an additional large capacity magazine.  *Id.; see* Exhibit 4.

## ARGUMENT

### A.  Leary Abandoned the Loaded Firearm and Large Capacity Magazine

It is well established that "Fourth Amendment rights are personal, and a proponent of a motion to suppress evidence must prove that the challenged governmental action infringed upon his own Fourth Amendment rights."  *United States v. Kimball*, 25 F.2d 1, 5 (1st Cir. 1994).  The defendant has "the burden of establishing" his Fourth Amendment rights in the premises searched or property seized were violated.  *United States v. Dunning*, 312 F.3d 528, 531 (1st Cir. 2002).  To meet this burden, the defendant must establish "a subjective expectation of privacy" in the place searched and show that "society accepts that expectation as objectively reasonable."  *United States v. Mancini*, 8 F.2d 104, 107 (1st Cir. 1993).  "Search or seizure of abandoned property, even without a warrant, is simply not unreasonable."  *United States v. Wilkins*, No. 19-10401-RGS, 2020 U.S. Dist. LEXIS 58058, at *6-7 (D. Mass. Apr. 2, 2020) (quoting *United States v. Wilson*, 472 F.2d 901, 902 (9th Cir. 1973)).  While the issue of a defendant's subjective intent to abandon property is primarily a question of fact, whether his *expectation* of privacy in the allegedly abandoned property was reasonable is a matter of law for the court.  *Wilkins*, 2020 U.S. Dist. LEXIS 58058, at *6-7 (citing *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995)).

In this case, Leary relinquished any rights that he had to contest the seizure of the firearm, magazine, and ammunition when he abandoned the fanny pack before the police apprehended him.[4]  *United States v. Sealey*, 30 F.3d 7, 10 (1st Cir. 1994) (discarded weapon and ammunition

---

[4] Whether a defendant has retained an objectively reasonable expectation of privacy in abandoned property is a matter of law for the court.  *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995).

were abandoned property and therefore police did not need a warrant to search it); *see California v. Hodari D.*, 499 U.S. 621, 629 (1991) (fleeing suspect "tossed" a rock of cocaine). Here, the defendant intends to file an affidavit stating that he accidentally dropped the fanny pack that was strapped around his chest, i.e.—he did not intentionally abandon it.[5]  But "[w]hether an abandonment has occurred is determined on the basis of objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997); *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986). Determining whether certain property has been "abandoned" involves an objective test "under which intent may be inferred from words spoken, acts done, and other objective facts." *United States v. Figueroa*, No. 96-2065, 1998 U.S. App. LEXIS 26007, at *10-11 (1st Cir. Sep. 22, 1998). Further, even if the Court were to credit the defendant's convenient and unsupported assertion that he did not mean to lose control of his fanny pack containing a loaded firearm and magazine – an "inadvertent leaving of effects in a public place, whether or not an abandonment in the true sense of that word, can amount to a loss of any justified expectation of privacy." *United States v. Rogers*, No. 03-10313-RGS, 2005 U.S. Dist. LEXIS 3040, at *8 (D. Mass. Mar. 1, 2005) (quoting LaFave, 1 Search and Seizure § 2.6(b), at 575-576 (1996)).

The defendant nonetheless relies upon *United States v. Bey* for the notion that the defendant retains a privacy interest in property that is not voluntarily forfeited.  52 F. Supp. 3d 299, 303 (D. Mass. 2014).  In doing so, the defendant impermissibly widens the Court's narrow holding, which is entirely distinguishable from the facts of the instant case. *Id.*  In *Bey*, officers executed an arrest warrant for the defendant at his girlfriend's home. *Id.* at 301.  With guns drawn, officers ordered the defendant to show his hands and remain still. *Id.*  After the defendant was placed in handcuffs,

---

[5] This affidavit has not yet been filed, but counsel has provided the government with an unsigned version.

officers asked him if a backpack on the bed next to where he was arrested belonged to him. *Id.*
He denied it did, stating that the backpack belonged to his girlfriend. *Id.* No Miranda warnings
were given before this exchange. *Id.* When the officers later asked the defendant's girlfriend
about the backpack, she told police that it belonged to her but that she was lending it to the
defendant. *Bey*, 52 F. Supp. 3d at 302. Police searched the backpack with the girlfriend's consent
and found a loaded firearm, ammunition, and oxycodone pills. *Id.*

The defendant claimed the search of the backpack violated his Fourth Amendment rights.
*Id.* at 303. The government argued that (1) the defendant's relinquishment of ownership in the
backpack, via a statement to law enforcement that the backpack did not belong to him, was akin
to abandonment, and (2) that the girlfriend voluntarily consented to a search. *Id.* The Court
disagreed with the government's first argument, stating that it found "that Bey's abandonment was
not voluntary for purposes of the Self-Incrimination Clause, given the inherently coercive
environment in which Bey, handcuffed, was questioned by police with drawn guns." *Id.* at 304.

In contrast, here, the defendant did not verbally relinquish ownership in the fanny pack
when questioned by police. Rather, Leary's actions prove his intentional abandonment of it. As
set forth above, Leary was initially observed, as reflected on officer's bodycam footage, with a
fanny pack strapped across his chest. When officers slowed down their vehicle to talk to the
defendant, he took off running with the fanny pack. When the defendant was located by officers,
he was hiding in the bed of a truck on private property, without the fanny pack. The fanny pack,
unlike the defendant's shoe, was not stuck on a piece of a fence. Rather, it was intentionally hidden
behind a discarded door. *See* Exhibit 2.

Notably, in this District, a defendant's affidavit does not constitute evidence at the hearing,
unless the defendant testifies and is subject to cross-examination. *See United States v. Baskin*, 424

F.3d 1, 3 (1st Cir. 2005); *United States v. Phillipos*, 849 F.3d 464, 469 (1st Cir. 2017), as clarified on denial of reh'g, No. 15-1716, 2017 WL 3307482 (1st Cir. Aug. 3, 2017).  The First Circuit recently examined an instance where the defendant sought "to establish the requisite factual predicate for his motion solely on the basis of his own affidavit, which he would not allow the government to test through cross-examination." *Phillipos*, 849 F.3d at 469.  The Court found the District Court did not abuse its discretion in finding that the affidavit, on its own, "failed to establish the sufficient threshold showing of a factual dispute that the defendant was required to make." *Id.*  Accordingly, the contents of the defendant's affidavit provides no basis for relief as it is not evidence in the hearing, unless of course, the defendant testifies under oath.  *See id.*

## B.  Leary Was Not Seized Behind 2030 Columbus Avenue

Not every encounter between police and citizens rises to the level of a stop or seizure.  \ *Rogers*, 2005 U.S. Dist. LEXIS 3040, at *8.  A seizure of a person occurs when (1) the police use physical force against a person or (2) the person submits to a show of authority sufficient to cause a reasonable person to believe that he or she is not free to leave the police encounter or refuse to cooperate.  *See California v. Hodari D.*, 499 U.S. 621, 625-26 (1991).

In this case, Leary was not seized until he was apprehended, following his flight from police, in the bed of the pickup truck.  Neither any use of physical force nor a sufficient "show of authority" had occurred at the time officers approached Leary in the rear of 2030 Columbus Avenue.  As captured on body camera footage, officers merely pulled up alongside Leary in their cruiser, and began exiting the vehicle.  *See* Exhibit 1; *Rogers*, 2005 U.S. Dist. LEXIS 3040, at 9 ("[a]n officer also does not violate the Fourth Amendment by 'approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen…'" )(quoting *Florida v. Royer*, 460 U.S. 491,

497 (1983)); *see Michigan v. Chesternut*, 486 U.S. 567, 575 (1988) (officers shadowing a suspect

by driving alongside him while he was running did not amount to a seizure).  Second, Leary fled

from police − he did not submit to any show of authority, even briefly.[6]  As such, no stop was

effectuated and any resulting "fruit of the poisonous tree" analysis is irrelevant.  *Rogers*, 2005 U.S.

Dist. LEXIS 3040, at *10; *see Brower v. Inyo County*, 489 U.S. 593, 597 (1989) (a high-speed

pursuit is not a seizure).

### C. The Police Had Probable Cause to Arrest Leary When They Seized Him in the Truck Bed and Reasonable Suspicion That He Was Armed and Dangerous

By the time officers seized Leary located in the back of a pickup truck behind 16 Chilcott

Place, they had both probable cause that he was engaged in criminal activity, and reasonable

suspicion that he was armed and dangerous.  *Terry v. Ohio*, 392 U.S. 1, 31-34 (1968).  Specifically,

officers had probable cause to arrest Leary for trespass, based on his presence in a vehicle parked

in the rear of a private residence, M.G.L. ch. 266, §120[7], and subsequently, resisting arrest, based

on his struggle with officers, M.G.L. ch. 268, §32B.[8]  *See United States v. Martinez-Molina,* 64

F.3d 719, 726 (1st Cir. 1995)(the government "need only show that at the time of the arrest, the

facts and circumstances known to the arresting officers were sufficient to warrant a prudent person

---

[6] Common sense dictates that Leary fled because he had a loaded firearm and a large capacity magazine hidden in his fanny pack and he did not want to be caught with them given that he is a convicted felon.

[7] In order to be convicted of trespass under M.G.L. ch. 266, §120, the Commonwealth must prove that: the defendant, without right, entered or remained in the dwelling house, building, boat, enclosed or improved land of another; and the defendant was forbidden to enter or remain there by the person in lawful control of the premises, either directly or by means of notice posted.

[8] M.G.L. ch. 268 §32B provides "A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."

in believing that the defendant had committed or was committing an offense."). Probable cause "requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)) (internal quotation marks omitted).

The officers also had reasonable suspicion to believe Leary was armed and dangerous and therefore had the right to detain him. The determination of reasonable suspicion requires consideration of the "totality of the circumstances" collectively known to the police. *United States v. Romain*, 393 F.3d 63, 71 (1st Cir. 2004). Individual circumstances "are not to be dissected and viewed singly; rather they must be considered as a whole." *United States v. Trullo*, 809 F.2d 108, 111 (1st Cir. 1987). "A fact that is innocuous in itself may, in combination with other innocuous facts, take on added significance," which may culminate in reasonable suspicion. *United States v. Wright,* 582 F.3d 199, 212-213 (1st Cir. 2009) (quoting *United States v. Ruidiaz,* 529 F.3d 25, 30 (1st Cir. 2008)). The defendant, failing to acknowledge applicability of the totality of the circumstances, argues that BRIC information is uncorroborated, that a fanny pack is not indicative of criminal activity, and that a nervous reaction to police presence and/or flight does not establish reasonable suspicion.

Here, officers did not harbor suspicion based on one factor alone. Rather, they had reasonable suspicion based on a multitude of factors, including the defendant's nervous behavior at the time officers approached him, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); his known H-Block gang membership, *see United States v. Am*, 564 F.3d 25, 32 (1st Cir. 2009) (gang affiliation one factor leading to reasonable suspicion); his flight from officers, *Wardlow*, 528 U.S. at 124 ("Headlong flight -- wherever it occurs -- is the consummate act of evasion: It is not necessarily

indicative of wrongdoing, but it is certainly suggestive of such."); *United States v. Gordon*, 231 F.3d 750, 757 (11th Cir. 2000) (the defendant's attempt to avoid police is a relevant consideration in establishing reasonable suspicion), his presence in a high crime area, *United States v. Atlas*, 94 F.3d 447, 450-451 (8th Cir. 1996), and his ignoring of police orders to keep his hands up. *Wright*, 582 F. 3d at 212-213 ("[F]ailure to heed an officer's order, while not conclusive of reasonable suspicion itself, is supportive of it"); *United States v. Soares*, 521 F.3d 117, 121 (1st Cir. 2008) (holding that suspect's refusal to obey police orders to remain still supported officer's judgment that suspect posed a threat).

### D. Even if the Defendant Retained Possession of His Fanny Pack, the Loaded Firearm and Magazine Would Have Been Discovered Inevitably

Finally, even if Leary retained possession of the fanny pack, as he allegedly intended to, it would have been inevitably discovered.  The inevitable discovery doctrine provides that "evidence obtained by violating the Fourth Amendment is nonetheless admissible '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" *United States v. D'Andrea*, 648 F.3d 1, 12 (1st Cir. 2011) (quoting *Nix v. Williams*, 467 U.S. 431, 444(1984)); *see United States v. Silvestri*, 787 F.2d 736, 744-45 (1st Cir. 1986).

Here, Leary would have been pat-frisked based on the reasonable suspicion that he was armed and dangerous.  *United States v. Rasberry*, 882 F.3d 241, 249 (1st Cir. 2018) (citing *United States v. Scott*, 270 F.3d 30, 41 (1st Cir. 2001))("A police officer may frisk a suspect on reasonable suspicion that the suspect is armed and dangerous.").  If the fanny pack were, as Leary had allegedly intended, still strapped around his chest, then officers would have felt the firearm and large capacity magazine in the fanny pack under the plain-feel doctrine.  *Rasberry*, 882 F.3d at 249 ("a police officer can seize an object if, by touch, its incriminating character is 'immediately

apparent.'")(quoting *United States v. Schiavo*, 29 F.3d 6, 9 (1st Cir. 1994)); *see United States v. Bates*, 750 F. Supp. 2d 342, 352 (D. Mass. 2010).  Even if the plain feel doctrine was inapplicable, the fanny pack would have been searched incident to arrest.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny the defendant's motion to suppress.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    */s/ Mackenzie A. Queenin*
Mackenzie A. Queenin
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
mackenzie.queenin@usdoj.gov

Dated: August 14, 2020

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

*/s/ Mackenzie A. Queenin*
Mackenzie A. Queenin

Dated: August 14, 2020